Barry Bros. et als. vs. White Lead and Color Works.

## No. 13,749.

BARRY BROS. ET ALS. VS. AMERICAN WHITE LEAD AND COLOR WORKS.

### . SYLLABUS.

1. In probate proceedings all evidence in support of a judgment must appear of record; and in this respect insolvency proceedings are assimilated to probate proceedings. Hence, a judgment homologating the quarterly statements or the final account of a receiver will be set aside on appeal, unless supported by evidence of record.

2. *Ex parte* affidavits are not evidence.

3. Act 159 of 1898 is imperative against the approving of the quarterly statement of a receiver until ten days after notice of the filing of such statement shall have been entered in the receivership order book, a book which under provision of the same act must be kept by the Clerk of Court; hence, a judgment approving a receiver's quarterly statement, without such entry having been made, must be set aside.

4. The law providing for the fixing of the fees of receivers is Act 159 of 1898. Where the receivership is of a going concern, the fees are the same as those of syndics under Section 1818 of the Revised Statutes. Where the receivership is not of a going concern, the fees are fixed by the judge at his discretion.

5. The law fixing the fees of auctioneers is Act 104 of 1896. By this law these fees are fixed as follows: On sales of immovables, two per cent. on the first ten thousand dollars of the price and one per cent. on the excess; on sales of movables, not more than five per cent. of the price, at the discretion of the court. Where the immovables and the movables are not sold separately, but in block, the appraisement of the property must be taken for basis of computation.

6. A pledgee of bonds authorized by the act of pledge to sell the bonds, with or without notice, at public or private sale, and at such sale to become the purchaser, may thus sell the bonds and become the purchaser of them. In this case the bonds were sold after full notice and at fair price.

7. Where the immovables and the movables of an insolvency are sold confusedly in block, and the property thus sold was affected by mortgages and privileges, the court will apportion the price equitably among the mortgage and privilege creditors. In this case the appraisement of the property is adopted as the basis of the apportionment.

8. Where receivers permit the purchaser at the judicial sale of the immovable property of the estate to pay the price of the sale direct to a creditor holding a mortgage on said property they do so without right and at their peril; and in the settlement of the estate the said price will be dealt with as if collected by the receivers.

9. Where a case on homologation of final tableau is fixed for trial before the expiration of the ten days public notice of the filing of the tableau, and after said fixing an opposition is filed, the fixing will not be binding on the opponent unless he is notified thereof by posting as required by rule of court. But, where such fixing was for the 28th of September, and on that day the trial is postponed to the 15th of October, and is again postponed to the

29th of October, and the attorney for the opponent is present at the latter postponement and verbally consents thereto, the said opponent cannot, at the calling of the case on the 29th of October, claim a continuance because of his having not been notified by posting, or because his former attorney no longer represents him, and his new attorney has but a few days before come into the case. Continuances are necessarily in great measure within the discretion of the trial judge.

A PPEAL from the Civil District Court, Parish of Orleans.— *King, J.*

*Dinkelspiel & Hart,* for Receivers of the Defendants, Appellees.

*Thomas J. Duggan* and *Theodore Cotonio,* for W. J. Martinez, Opponent, Appellant.

*Benjamin Rice Forman,* for Hills & Wright Linseed Oil Co., Ltd., Creditor, Opponent, Appellant.

The opinion of the Court was delivered by

PROVOSTY, J. This is an appeal from the judgments approving two quarterly statements of the receivers, and also from a judgment homologating, in so far as not opposed, the final account of the receivers; and, lastly, from a judgment rejecting the appellant's opposition to the final account of the receivers and homologating a second time said account.

Complaint is made that the two quarterly statements were approved without a notice of their filing having been entered on the Receivership Order Book, which, by Section 8 of Act 159 of 1898, the Clerk of Court is required to keep. If said notice was not so entered, the approvals must be set aside. Section 9 of said Act 159 is imperative that "no statement shall be approved by the court until ten days after entry of such notice" in the order book. The receivers do not say that the notice was so entered, and we find in the record no evidence that it was. The judgments must, therefore, be set aside. We considered whether we might not presume, in the absence of proof to the contrary, that such entry had been made; ordinarily the Appellate Court presumes that the judgment appealed from was supported by proper evidence; but this presumption does not obtain in probate proceedings, and insolvency proceedings are assimilated to probate in

respect to the necessity for all evidence to appear of record. Bargebur vs. Their Creditors, 4 N. S. 620; Pelican Saw Mill Co., in Liquidation, 48th Ann. 716.

For the same reason of absence of evidence to support it, the judgment of October 5, 1900, homologating the final account, in so far as not opposed, must be set aside. The only proof of the account was by *ex parte* affidavit. *Ex parte* affidavits are not testimony. They cannot serve to support the account on an issue joined by default any more than they could serve on an issue joined by opposition.

Pending the application for the appointment of receivers, the president of the insolvent concern resigned, and the opponent, Martinez, who was the vice-president, acted as president for a space of twenty-two days. He claims that he is entitled to receive for this service the same pay that the president would have gotten if he had not resigned. He is not entitled to this pay by charter or by resolution. Is he entitled to it on the principle that the laborer is worthy of his hire? The evidence shows that the amount of work done by him was insignificant. The secretary was asked, on the witness stand: "What did he do?" and he answered: "He opened the mails and referred everything to me." Opponent is a dealer in shoes, and knows nothing about the manufacturing, etc., of paints; whereas, the salary he claims had been allowed to the president in view of the fact of the latter's knowledge and skill as a practical manufacturer of paints. We think the amount of work done by opponent was not more than he might well do in his capacity of vice-president without pay.

We are not told and fail to see on what ground is based the contention that the opponent's two thousand five hundred dollars claim is privileged. It is a plain, ordinary debt due by the estate on a promissory note.

The law providing for the fixing of the fees of receivers is Section 6 of Act 159 of 1898. It provides that "such receivers shall receive the same compensation as syndics of insolvents, whenever the power is not conferred upon him to conduct the business of the corporation as a going concern; otherwise his compensation shall be fixed at such reasonable sum as the nature of the case justifies." If this estate was a going concern, the receivers were entitled to charge, under Section 1818, Revised Statutes, which is the law fixing the commission of syndics of insolvents, five per cent. on the net amount of money received by them. This would make a sum exceeding the two thousand

dollars allowed, the receivers having handled over eighty thousand dollars. If the estate was not a going concern, the fixing of the fee was a matter within the discretion of the court; and we think the judge *a quo,* in this instance, exercised that discretion wisely. He allowed a commission of two thousand dollars. The administration lasted over eight months, and was onerous, and involved great responsibility.

The opposition to the fees of the lawyers, the notary and the appraisers, was not pressed in the oral argument, and in the briefs we are not advised of the reasons why these fees are considered to be excessive. The testimony is to the effect that they are fair, and the judge *a quo* approved them. We see no reason for disturbing his judgment.

Under Act 104 of 1896, the auctioneer is entitled, on sales of immovables, to two *per cent.* on the first ten thousand dollars, and one *per cent.* on the excess; and on sales of movables to not more than five *percent.* The total price was forty-four thousand five hundred dollars, of which, as shown hereinafter, two-thirds, or twenty-nine thousand six hundred and sixty-six dollars was for the immovables, and one-third, or fourteen thousand eight hundred and thirty-three dollars was for the movables. Computing on this basis, and supposing the judge *a quo* to have allowed the full five per cent. on the price of the movables, we find that the commission of the auctioneer amounted to one thousand one hundred and twenty-four dollars. Now if to this we add the hospital tax and the exchange fees, two hundred and sixty-nine 50-100 dollars, and the eleven 70-100 dollars which counsel of opponent are disposed in their brief to allow to the newspapers for printing, we have one thousand four hundred and five 20-100 dollars, an amount exceeding by over two hundred dollars, the one thousand one hundred and ninety-four dollars allowed in the acount.

This brings us to the thirty-two thousand seven hundred and thirty dollars item; that is to say, to the gist of the controversy. Opponent claims that this indebtedness is not proved. We think it proved abundantly. The Color Works was embarrassed. Its board of directors provided for the creation of bonds secured by mortgage on the immovables of the concern. Under resolution duly passed, sixteen thousand dollars of these bonds was sold to Frank Roder, and fourteen thousand dollars was pledged as collateral on a twelve thousand dollars note due

the Metropolitan Bank. Every dollar of the price of the sale was paid to the company, and the debt secured by the pledge was an unquestionable debt. The pledge was in the usual form, carrying the right to sell, etc. Acting clearly within the express terms of the pledge, and after repeated demands, and after ample warning to the receivers, the Metropolitan Bank sold to itself the bonds at what was considered to be a fair price, there being no market price, the bonds not being listed. The sale of the sixteen thousand dollars of bonds is proved; the existence of the twelve thousand dollars debt is proved; the pledge is proved. The opponent, Martinez, was a member of the board of directors, and as such, participated in the passing of the resolutions by which the sixteen thousand dollars of bonds was sold and the fourteen thousand dollars was pledged.

The testimony of Mr. Henry P. Dart, whose statements this court knows can be accepted implicitly, puts beyond the shadow of a doubt the soundness of these transactions. After this, what difference can it make that Mr. Hare and then Mr. Wuerpel were trustees for holding these bonds. How the owner and the pledgee of these bonds wanted them to be held, was their own business. These bonds, and the interest thereon, thirty-two thousand seven hundred and thirty dollars, were properly placed on the account as a mortgage debt.

But the mortgage bore only on the realty, and the debt secured by it is entitled to preference only on the price of the realty. As the sale was made in block, the real and the personal property together, this price of the realty can be separated only by an equitable apportionment. For this apportionment the obvious basis to adopt is the appraisement. The appraisement of the realty was forty-five thousand dollars, and of the personal property fifteen thousand dollars. The proportion is, therefore, as two to one. The total price having been forty-four thousand and five hundred dollars, the mortgage creditors are entitled to take two-thirds of this, or twenty-nine thousand six hundred and sixty-six dollars. On no theory can the mortgage creditors claim a preference on the price of the movables.

The price must be dealt with as if in the hands of the receivers. The sale having been a judicial sale, the proceeds thereof had to be paid into the hands of the officers of the court. If the receivers permitted the purchaser to pay it direct to the creditors, they did so without right and at their risk and peril. The property passed to the pur-

chaser free of the mortgage securing the bonds, this mortgage having shifted to the proceeds. Hennen's Digest, Vol. 1, p. 262.

The opponent moved for a continuance on the ground that the fixing of the case for trial had not been posted as required by the rules of court, and that, consequently, he had had no notice of the fixing. In passing on this motion the court said:

"The records of this court show that this case was called for trial on September 26th, and duly posted. The opposition was filed after the case was called for trial. It was called on the 28th and fixed for trial on the 15th of October. On the 15th of October, the case was again continued for trial until to-day (29th of October). The opposition not having been filed before the case was called, and a statement having been made before the court by counsel, that Judge Duggan, counsel for opponent, was aware that the case was fixed at one time in this court for trial and posted, and considering that there is a large amount of money to be distributed in this case, in which there are a number of lawyers engaged, the court, under the law, exercising its discretion, refuses the continuance and orders the case to proceed to trial."

· This ruling has our approval. The object of posting is to give notice, and the opponent in this case had notice and full time for preparation. The several bills of exception reserved by opponent to the admission of testimony are without merit.

It is, therefore, ordered, adjudged and decreed, that the judgment signed on May 30th, 1900, homologating the statement of the receivers for quarter ending February 28th, 1900, and the judgment signed on July 3rd, 1900, homologating the statement of the receivers for quarter ending May 31st, 1900, and the judgment rendered and signed October 5th, 1900, homologating the final account of the receivers in so far as not opposed, be annulled and set aside.

It is further ordered, adjudged and decreed, that the judgment rendered November 13th, 1900, and signed November 19th, 1900, be affirmed, except in the particulars hereinafter specified. It is ordered, adjudged and decreed that the receivers herein account to the creditors herein for the price of the sale of the property heretofore sold herein as if said price had been by them collected; and that the said receivers file a new account herein distributing the said price and the other funds of the estate on hand as per the final account, as follows:

To privileged creditors the sum of four thousand nine hundred and eight and 60-100 ($4,908.60) dollars, as heretofore decreed; to the holders of the mortgage bonds the sum of twenty-nine thousand six hundred and sixty-six dollars ($29,666); to the ordinary creditors *pro rata* the remainder, after first, however, satisfying costs and other privileged debts, including the auctioneer's bill as heretofore allowed.

The costs of this appeal to be borne by the estate.